197 N.J. Super. 510 (1984)
485 A.2d 335
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN SUMMERS, DEFENDANT.
Superior Court of New Jersey, Law Division Hudson County.
Decided June 27, 1984.
*512 Eugene J. Pietroluongo, Assistant Prosecutor, for plaintiff (Harold J. Ruvoldt, Jr., Prosecutor of Hudson County, attorney).
Richard S. Hanlon for defendant (Mayer L. Winograd, Deputy Public Defender for Hudson County, attorney).
BILDER, J.S.C.
These are motions by a criminal defendant for orders conferring use immunity upon defense witnesses who have invoked privileges against self-incrimination. It has never been considered, or even referred to, in this jurisdiction. It finds its genesis in a well-reasoned Third Circuit Court of Appeals opinion in which Judge Garth enunciated the theory that in an appropriate circumstance constitutional due process might require the grant of immunity to a defense witness and that a court has inherent power to grant the necessary immunity to vindicate that right. Government of Virgin Islands v. Smith, 615 F.2d 964 (3 Cir.1980).
Defendant John Summers was indicted for theft of a 1983 Mercury Cougar automobile and receiving stolen property. The State contends that defendant, a co-defendant Julia Kosarowich,[1] *513 and an unknow third party stole the key for the Cougar from an automobile rental agency in Kearny and later returned with the key and stole the car.
The story in support of the State's contention as related by its two witnesses  both employees of the car rental agency  is as follows:
At about 6:15 p.m. on January 5, 1984, defendant accompanied by a male and a female companion visited the offices of Budget Rental. Defendant was a recently fired employee and came to the office to collect some unreimbursed tolls which were owed to him. Defendant spent part of the time in the front office by the counter and part of the time in a rear office with the manager. His companions remained by the front counter throughout the visit.
During the time of the visit, keys to a 1983 Mercury Cougar were placed on a shelf behind the counter. After the defendant and his companions left, the keys could not be found. When this loss was discovered, because the car could not be moved without the keys, other motor vehicles were parked on each side of the Cougar and behind it, to make its theft more difficult. It remained possible however to move the Cougar forward across the curb and into the street.
The rental agency employees went to dinner and returned to the premises a little after 7:00 p.m. As they approached, they saw the Cougar being driven across the curb and into the street. They immediately gave chase and cut the Cougar off within some 40 feet or so, at which time two men and a girl got out of the Cougar and ran away. Foot pursuit ultimately resulted in the capture of the girl; the two men escaped. The defendant was positively identified in court by both witnesses as one of the occupants of the Cougar.
*514 As a matter of statutory law, use immunity may be granted in criminal cases at the request of a county prosecutor with the approval of the Attorney General or at the direct request of the Attorney General. N.J.S.A. 2A:81-17.3. Such immunity permits testimonial compulsion without violating the witness' Fifth Amendment rights. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Unlike the Federal immunity statute, 18 U.S.C.A. § 6002, which can be used to grant immunity to defense witnesses, see Virgin Islands, supra, 615 F.2d at 969, n. 7, the New Jersey statute appears to be thought of as solely directed at prosecution witnesses. See In re Petition to Compel Testimony of Tuso, 73 N.J. 575 (1977). At least no cases or commentaries have been found suggesting a broader use. As a general rule defendants do not have the benefit of such testimonial compulsion. Annotation, "Right of Defendant in Criminal Proceeding to have Immunity from Prosecution Granted to Defense Witness," 4 A.L.R. 4th 617 (1981). While it is arguable that the New Jersey statute might be broadly interpreted so as to provide for the grant of use immunity to defense witnesses at the request of the prosecutor and/or Attorney General, the question is moot because here this issue was not pressed. Thus the question before this court is whether it has the inherent power to grant use immunity to a defense witness in order to vindicate both the witness' Fifth Amendment rights and the defendant's due process rights.
In Virgin Islands, supra, Judge Garth drew from an earlier 3rd Circuit opinion, United States v. Herman, 589 F.2d 1191 (3 Cir.1978), cert. den. 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979), the proposition "that in certain cases a court may have inherent authority to effectuate the defendant's compulsory process right by conferring a judicially fashioned immunity upon a witness whose testimony is essential to an effective defense. [589 F.2d at 1204] (emphasis added)." Virgin Islands, supra, 615 F.2d at 966. The basis for the power lay in the need to vindicate defendant's due process rights. This *515 judicial immunity "is triggered ... by the fact that the defendant is prevented from presenting exculpatory evidence which is crucial to his case." Id. at 969.
There is no doubt that the position enunciated by Judge Garth in Virgin Islands is a minority view. See A.L.R. Annotation, supra. Its only case support lies in dicta from the 2d Circuit. See United States v. Turkish, 623 F.2d 769 (2 Cir.1980), cert. den. 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). Yet it finds strong support in reason and a sensitivity to constitutional principles. "... the judiciary has constitutional responsibilities for the fairness of a trial." Id. at 776. The vindication of this right has led to the requirement of effective counsel even at the expense of the creation of an entire public defender system. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). And the State may be required to disclose the identity of an informer when a fair trial requires it. See State v. Milligan, 71 N.J. 373, 383 (1976); Roviaro v. United States, 353 U.S. 53, 60-61, 77 S.Ct. 623, 627-628, 1 L.Ed.2d 639, 645 (1957).
I recognize that the proposed grant of immunity raises problems. There is the instinctive feeling that it represents an interference with the executive branch. See Turkish, supra, 623 F.2d at 776. There is the more objective recognition of the risk of undesirable collateral effects which can flow from a grant of use immunity which has not been requested and, indeed, might be resisted by the State. There is a legitimate concern that the defense by the use of immunized testimony may be enabled to create an immunity bath. See In re Kilgo, 484 F.2d 1215, 1222 (4 Cir.1973). At the very least, such an immunity puts a burden on the State to show in any future prosecution that the evidence was obtained from a legitimate source wholly independent of the compelled testimony. See Whippany Paper Board Co. v. Alfano, 176 N.J. Super. 363, 371 (App.Div. 1980); Turkish, supra, 623 F.2d at 775-776.
*516 But constitutional rights cannot depend upon an absence of problems. Difficulty, effort and, indeed, sacrifice have always been considered a reasonable price to pay for personal rights. And this is particularly true of New Jersey whose original Constitution was a source for the first 10 amendments of the U.S. Constitution, see Jackman v. Bodine, 43 N.J. 453, 465 (1964); State v. Schmid, 84 N.J. 535, 557 (1980), and whose present Constitution has been interpreted as giving broader protection than the Federal document. State v. Baker, 81 N.J. 99, 112 (1979). The problems are not insuperable. See Note, "The Sixth Amendment Right to Have Use Immunity Granted to Defense Witnesses," 91 Harv.L.Rev. 1266, 1271-1279 (1978). Compared to the burdens created by the vindication of the right to counsel, they are minimal. From a law enforcement stand-point, they are almost the same as those confronted with respect to the need to disclose the name of an informant. The considerations are probably the same and the options  to disclose or terminate the prosecution  are identical. If the vindication of a defendant's right to a fair trial requires the grant of use immunity and the State finds the collateral consequences unacceptable, it can dismiss the indictment.
A recognition of the right of a defendant to obtain use immunity in order to obtain testimonial evidence does not mean that such immunity should be freely granted. The availability of such relief is limited only to those appropriate circumstances when it is truly required by due process.
Not unusually there is a balancing process. The trial court must weigh the witness' Fifth Amendment right, the defendant's right to a fair trial and the public interest against immunity grants. Judge Garth has thoughtfully set forth a set of standards which aid in the process.
... immunity must be properly sought in the district court; the defense witness must be available to testify; the proffered testimony must be clearly exculpatory; the testimony must be essential; and there must be no strong governmental interests which countervail against a grant of immunity. [Virgin Islands, supra, 615 F.2d at 972.]
*517 As Judge Garth noted in setting forth these tests, the judicial use of this immunity power must be clearly limited. Ibid. And see discussion, Id. at 972-974. Defense witness immunity is an extraordinary remedy which should not be generally available nor should it be the basis for the regular interruption of criminal trials with accompanying interlocutory appeals. See Turkish, supra, 623 F.2d at 778. Except in the clearest of cases, such relief should be summarily rejected. The existence of this extraordinary remedy should not lead to routine "Summers hearings."
In order to assert the right to this remedy, a defendant must make timely demand before the start of trial. This will insure to the State adequate opportunity to consider the collateral consequences of the grant of use immunity and permit the court to properly consider the risks to the public interest. See Turkish, supra, 623 F.2d at 778, n. 5. Of course the motion itself should be heard in the context of the proffered testimony, when the issue has ripened and the facts are clear.
In the instant case the defendant seeks to introduce the testimony of two accomplices for the claimed purpose of showing that the Cougar was stolen for a joy ride and not to permanently deprive the owner of its property. By such evidence defendant hopes to overcome the inference of purpose to deprive needed to sustain a conviction of theft, N.J.S.A. 2C:20-3, a third degree offense, and to subject himself instead to the less serious crime of joy riding  a disorderly person offense. N.J.S.A. 2C:20-10. Both witnesses have asserted their Fifth Amendment rights. A motion for the grant of immunity to Julia Kosarowich was made before trial. A motion with respect to John Muir, presumably the unknown third party, was made during trial after Muir refused to testify.
Here the proffered testimony is not clearly exculpatory  but, at best, mitigating. Nor is it essential to defendant's case. If he wishes to claim participation but merely for the purpose of joy riding, he is free to take the stand and so testify.
*518 As previously noted, the requested immunity is an extraordinary one, which should only be granted in the clearest of circumstances. Defendant's claim does not approach the required standards.
Additionally, it should be noted that the request as to John Muir is barred by defendant's failure to move for his use immunity before trial.
The motions are denied.
NOTES
[1] The co-defendant has been admitted into the Pretrial Intervention Program and thus the case against her is in suspension.