STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. PAUL CITO, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 16, 1986—Decided October 30, 1986.

Before Judges O'BRIEN, SKILLMAN and LANDAU.

*William T. Norris,* designated counsel, argued the cause for appellant (*Alfred A. Slocum,* Public Defender of New Jersey, attorney; *Jacqueline E. Turner,* Assistant Deputy Public Defender, of counsel and on the brief).

*Jessica S. Oppenheim,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General of New Jersey, attorney; *Oppenheim,* of counsel and on the brief).

The opinion of the court was delivered by

O'BRIEN, J.A.D.

Defendant appeals from his conviction of third degree burglary (*N.J.S.A.* 2C:18–2) and third degree theft (*N.J.S.A.* 2C:20–3), upon which he was sentenced to consecutive extended terms of ten years with a five-year period of parole ineligibility, for an aggregate term of 20 years with a ten-year period of parole ineligibility. We affirm the convictions but correct the sentence.

Articles stolen from a burglarized house on January 17, 1982 were seized from defendant's home after two searches pursuant to warrant. A screwdriver, determined by an expert to be the tool used to gain entrance to the burglarized residence, and a shoe, which matched footprints in the snow around the home, were also seized. We reversed an order suppressing this evidence, and the Supreme Court denied leave to appeal.

At his trial, defendant appeared *pro se* with the assistance of a public defender assigned for that purpose. Although defendant did not testify, in his opening, examination of witnesses and summation, he relied on alibi and contended that the items found in his home were being held by him for one John McGuire (McGuire).

Called as a defense witness at a Rule 8 hearing, McGuire pled the Fifth Amendment. Thereafter the trial judge refused defendant's request to have McGuire appear before the jury and assert his Fifth Amendment privilege. The trial judge also refused to judicially grant use immunity to McGuire to enable him to testify as a defense witness. Additionally, the trial judge refused defendant's request for public funds to be used for the transportation of two out-of-state witnesses whom he claimed to be indigent.

Defendant appeals from these rulings and advances the following legal arguments:

POINT I—THE TRIAL JUDGE ERRED IN REFUSING TO PERMIT DEFENDANT TO CALL BEFORE THE JURY A WITNESS WHO WOULD INVOKE HIS FIFTH AMENDMENT RIGHT TO BE FREE FROM SELF-INCRIMINATION; THIS DENIAL VIOLATED DEFENDANT'S RIGHT TO CALL WITNESSES IN HIS DEFENSE IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ART. I, PAR. 10 OF THE NEW JERSEY CONSTITUTION.

POINT II—THE TRIAL JUDGE ERRED IN DENYING DEFENDANT'S MOTION TO HAVE IMMUNITY CONFERRED ON JOHN McGUIRE WHO REFUSED TO TESTIFY ON DEFENDANT'S BEHALF ON THE GROUNDS THAT HIS TESTIMONY COULD INCRIMINATE HIM, IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ART. I, PAR. 10 OF THE NEW JERSEY CONSTITUTION.

POINT III—THE TRIAL JUDGE ERRED IN DENYING DEFENDANT'S REQUEST FOR FUNDS TO BRING HIS ALIBI WITNESSES TO NEW JERSEY IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ART. I, PAR 10 OF THE NEW JERSEY CONSTITUTION.

POINT IV—THE IMPOSITION OF TWO CONSECUTIVE EXTENDED TERM SENTENCES BY THE SENTENCES [sic] JUDGE UPON THE DEFENDANT REPRESENTS AN ILLEGAL SENTENCE: THE DEFENDANT'S SENTENCE, THEREFORE, MUST BE VACATED.

■ The oral decision of the trial judge not to permit McGuire to invoke his privilege against self incrimination in the presence of the jury was reduced to a written opinion and published. *See State v. Cito*, 196 *N.J.Super.* 220 (Law Div. 1984). We have recently addressed this issue in a case decided after the trial here under review. In *State v. Nunez*, 209 *N.J.Super.* 127 (App.Div.1986), we concluded that a defendant may not call a witness to testify before the jury whom he knows, or after a Rule 8 hearing ascertains, will claim his Fifth Amendment privilege. In reaching that conclusion, we relied upon *Bowles v. United States*, 439 *F.*2d 536 (D.C.Cir.1970), *cert.* den. 401 *U.S.* 995, 91 *S.Ct.* 1240, 28 *L.Ed.*2d 533 (1971), and *State v. Karlein*, 197 *N.J.Super.* 451 (Law Div.1984). The *Nunez* court did not refer to the published opinion of the trial judge in this case. We further note the disagreement with *State v. Cito* by the trial judge in *State v. Karlein*, where he said, in a footnote:

To the extent that dicta in *Cito* suggests that a witness who had knowledge of relevant facts could be called by the defense in order for the witness to exercise his Fifth Amendment rights at trial, this court would not follow the dicta of the *Cito* opinion. [197 *N.J.Super.* at 455 n. 1]

Since, as found by the trial judge, "there was no evidence that [McGuire] had any knowledge or information which could bear on the facts in issue or the innocence of the defendant," it is not necessary for us to address the suggestion by the judge in his opinion that

... what the Supreme Court [in *State v. Jamison*, 64 *N.J.* 363 (1974)] appears to hold is that it would be error to deny a defendant the right to call before a jury a witness who asserts in advance his intention to exercise the Fifth Amendment if the trial court *knows* that the witness has evidence which could

have some impact on the facts in issue or the innocence of the defendant. [196 *N.J.Super.* at 227]

The refusal to permit defendant to call McGuire to invoke the Fifth Amendment in the presence of the jury was not error. *See State v. Nunez, supra.*

■ Defendant next contends the trial judge should have granted use immunity to McGuire in order that his testimony be available to defendant. The trial judge concluded that he did not have authority to grant use immunity. Under the circumstances in this case, we agree. *N.J.S.A.* 2A:81-17.3 authorizes the court, on request of the attorney general or the county prosecutor with the approval of the attorney general, to order a witness claiming Fifth Amendment immunity to testify. Upon compliance by the witness, and if his claimed privilege was valid, "such testimony or evidence, or any information directly or indirectly derived from such testimony or evidence, may not be used against the person in any proceeding or prosecution for a crime or offense concerning which he gave answer or produced evidence under court order." Thus the witness is given use immunity.[1]

There is no evidence that defendant sought to have the attorney general or the prosecutor, with the consent of the attorney general, apply for use immunity for McGuire. Rather, defendant contends that the court has inherent power to grant use immunity to a defense witness who claims the Fifth Amendment privilege. There is some support for defendant's contention. *See State v. Summers,* 197 *N.J.Super.* 510 (Law Div. 1984), which looks for its genesis to *Government of Virgin*

---

[1]Use immunity, as opposed to transactional immunity, only precludes as evidence against the witness in a subsequent trial, the use of the testimony or evidence produced by the witness at the trial in which he was granted the immunity, or any information directly or indirectly derived from such testimony or evidence. On the other hand, transactional immunity precludes any prosecution whatsoever for the crime or crimes about which the immunized witness testifies. *See Kastigar v. United States,* 406 *U.S.* 441, 92 *S.Ct.* 1653, 32 *L.Ed.*2d 212 (1972).

*Islands v. Smith,* 615 *F.*2d 964 (3rd Cir.1980), drawn from an earlier Third Circuit opinion, *United States v. Herman,* 589 *F.* 2d 1191 (3rd Cir.1978), *cert.* den. 441 *U.S.* 913, 99 *S.Ct.* 2014, 60 *L.Ed.*2d 386 (1979). *But see State v. Jordan,* 197 *N.J.Super.* 489, 503 n. 5 (App.Div.1984). However, even if this minority position prevailed in the State of New Jersey, defendant falls woefully short of the standards suggested in *Government of Virgin Islands v. Smith, supra,* and *State v. Summers, supra.*

Although McGuire was apparently available to testify, there was nothing to indicate what his proffered testimony would be, much less that it would be exculpatory.[2] Defendant's contention that McGuire had not been charged in this offense, as support for "lack of a strong governmental interest which countervails against the grant of immunity," is unsupported. *See Virgin Islands,* 615 *F.*2d at 972. Accordingly, whether or not he had the authority, the trial judge properly denied defendant's request that McGuire be given use immunity so that he could testify as a defense witness.

Defendant claims that, as an indigent, he was entitled to have certain out-of-state witnesses transported to New Jersey at public expense. Defendant had been represented by the public defender's office for over two years when, on a date set for trial, defendant made application to the assignment judge to represent himself. In granting his application, defendant was advised by the assignment judge that he would be losing out on the services of the public defender's office if he chose to represent himself.

■ The office of the public defender may exercise its own discretion in expending funds for an indigent defendant. *See State v. Cantalupo,* 187 *N.J.Super.* 113, 121 (App.Div.1982),

---

[2]There is nothing to indicate that McGuire ever was a suspect in this burglary and theft, except for defendant's, perhaps well informed, argument to that effect in his brief. As noted above, it would have been improper to permit the jury to infer McGuire's involvement, by his invocation of the Fifth Amendment.

where defendant contended it was error for the public defender to refuse to transport alibi witnesses to the trial. There we held that the expenditure of funds by the public defender is a matter committed to his best judgment, but reviewable by the court. *But see State v. Linares,* 192 *N.J.Super.* 391 (Law Div.1983), requiring the public defender's office to supply the services of interpreters for the benefit of an indigent defendant.[3]

One of the witnesses defendant wished to call was his mother, Rose Cito, who resided in Florida. On this appeal, defendant argues the importance of her testimony to his alibi defense. According to her statement, defendant's mother spent the entire day of January 17, 1982 with defendant, except for one hour while he was at a store. When questioned at oral argument as to the cumulative nature of this testimony, defendant's counsel argued that Rose Cito's testimony was of a better quality than that of the witnesses who were called.

■ It has been held that when a defendant is represented by private counsel retained by his parents, the public defender is relieved of paying the cost of expert witnesses engaged on behalf of the indigent. *See In Re State v. Stockling,* 160 *N.J.Super.* 486 (App.Div.1978). However, we find it unnecessary to decide whether this principle applied to this defendant (who was not represented by private counsel, but rather appeared *pro se* with the public defender acting as his advisor), nor to address the conclusion of the trial judge that the decision by defendant to represent himself necessarily requires him to waive all other services from the public defender, in view of our conclusion that any error was harmless since the testimony of

---

[3]In *State v. Linares,* the public defender sought reimbursement from the county for the expense of interpreters. Although reimbursement was denied, in a proper case the county may be required to pay for some services for an indigent defendant even if the public defender is not required to pay for them out of his budget. *See State v. Rush,* 46 *N.J.* 399 (1966); *State In Re Antini, Jr.,* 53 *N.J.* 488 (1969).

defendant's mother would have been cumulative to other evidence proffered in support of his alibi. Defendant presented two alibi witnesses at trial. The Director for Skillman Youth Correctional Institution testified that defendant, his mother and brother had spent the day, until 3:00 p.m., at Skillman visiting another brother. The other witness was another of defendant's brothers, Vito, who testified that, with the exception of a two-hour gap, he had spent the day with defendant. Rose Cito's cumulative testimony would have added very little to defendant's alibi.

■ The other witness defendant desired to call was John Mazur (Mazur), an inmate at the Georgia State Prison. During the second trial[4] on March 6, 1984, defendant, for the first time, stated his desire to subpoena Mazur to dispute statements made by Lt. Meyers in an affidavit supporting the application for the search warrant. In these statements, Lt. Meyers alleged that Mazur told him there was "stuff" in defendant's basement. The testimony of this witness was intended to support the renewal of defendant's motion to suppress which had been originally granted, reversed by us on appeal, with leave to appeal denied by the Supreme Court. Clearly, this evidence was proffered too late. There was no error in refusing to require the public defender to transport Mazur from Georgia.

■ Lastly, the State concedes that the trial judge could not properly impose more than one sentence for an extended term. *See N.J.S.A.* 2C:44–5 a(2) and *State v. Latimore*, 197 *N.J.Super.* 197, 223 (App.Div.1984). Since both sides urge us to exercise our original jurisdiction under *R.* 2:10–5, we reduce the sentence imposed on the second count of Indictment No. 280–81–J to a term of five years with a two and one-half year period of parole ineligibility to be served consecutively to the sentence imposed on the first count.

---

[4]The first trial, which began on February 23, 1984, ended in a mistrial.

The convictions are affirmed. We remand to the trial judge for correction of the judgment to reflect the reduced sentence on the second count.